SCHOONOVER, Acting Chief Judge,
dissenting.
I must respectfully dissent from the majority’s decision to affirm the appellant’s conviction. At the risk of repeating some of the facts already supplied in the majority opinion, I submit the following information from the record in order to fully explain the reasons why I am compelled to disagree with the majority.
On the evening in question, Deputies Teed and Johnson were in a marked car patrolling an area in Florence Villa in connection with a special drug enforcement assignment. At the time of this incident, there were thirty or forty people coming and going on the street, including the appellant on his bicycle. Deputy Johnson, driver of the patrol car, attempted to flag the appellant down and yelled at him to stop. Once Deputy Johnson stopped the patrol car, the people who had been milling around converged on the vehicle. The appellant had difficulty stopping his bicycle and had gone about twenty feet past the patrol car before he was able to stop and turn around.
Deputy Teed exited the patrol car and went to the back of the vehicle. He testified that he thought the appellant might not have been planning to stop and that he was going to run the appellant down. The deputies agreed, however, that the appellant had made no attempt to flee. Deputy Teed further testified that on the appellant’s returning to the patrol car, the appellant ran his bicycle into the left rear of the vehicle and that he saw the appellant throw “something” under the car as if he was trying to get rid of it. Deputy Teed could not tell what had been thrown, and no other witness testified to having seen the appellant throw anything.
Upon looking under the patrol car, Deputy Teed found a matchbox behind the left rear tire. Although the exact sequence of events is less than clear from the record, Deputy Johnson had by this time also exited the patrol car, and soon after the appellant hit the patrol ear with his bicycle, Deputy Biggs arrived at the scene. Deputy Teed testified that he immediately handed the matchbox to Deputy Biggs and “showed him what I had found.” According to Deputy Teed, Officer Biggs then asked the appellant to put his hands on the rear of the car, and they made the appellant “take everything out of his pockets and searched him for weapons and stuff”. Three hundred fifty-seven dollars and eighty cents was found on the appellant and seized for evidence. According to Deputy Bigg’s testimony, however, some money was already lying on the trunk of the patrol car by the time he had turned his attention from the matchbox to the appellant.
When the deputies were shown the matchbox and its contents at trial, they testified that based on their training and experience, the contents of the box appeared to be rock cocaine. Thus, I assume that when the deputies viewed the contents of the matchbox prior to the appellant’s arrest, they believed the contents to be rock cocaine at that time as well.
The appellant testified that he did not throw anything under the patrol car or have anything in his hands when he came *695 up to the vehicle. He denied having seen the matchbox prior to trial and offered an explanation as to why he had the large sum of money in his pockets.
As for the majority’s determination that the appellant spoke only Creole and was unable to speak or understand any English, my examination of the record led me to a different conclusion. An interpreter was required for the trial; however, the record reflects that when the appellant and his interpreter were sworn in, it was “made known that the said EXTRA AUGUS-TIN[E] does not speak English sufficiently well to testify before the Court.” Furthermore, although the record reflects that when the appellant was asked at trial whether he understood some English, he replied, “No,” his own testimony indicates otherwise. During direct examination of the appellant, he was asked whether he recalled the deputy stopping him. He responded, “When I was driving the bike, he put out his hand, he said stop.” The appellant also testified that one of the deputies asked him to take everything out of his pockets. Moreover, the transcript reveals that in some instances, the appellant testified directly instead of responding to all inquiries through the interpreter. Also, in arguing against the appellant’s motion for mistrial, the state only argued that the inquiry was made prior to any type of arrest or custody situation, not that the appellant could not respond because he neither spoke nor understood English.
The majority’s determination that the comment under consideration “did not reach the level of being a constitutionally impermissible comment on the appellant’s silence” seems to be based on their conclusion that the appellant spoke only Creole and did not speak or understand any English. That conclusion was also the majority’s basis for attempting to distinguish the impermissible comment here from the comment considered harmful in DiGuilio. Because the record reflects that the appellant had a limited ability to speak and understand English, I cannot agree with the majority’s conclusion that it was apparent to the jury that the appellant did not speak or understand English and, therefore, could not respond to the question.
Regardless of the appellant’s ability to speak or understand English, however, any testimony concerning a suspect’s silence when detained by law enforcement officers is constitutionally prohibited. Tindall v. State, 395 So.2d 289 (Fla. 5th DCA 1981). By the time the appellant was allegedly shown the matchbox and asked whether it was his, he was “in custody” because he had become the focus of the deputies’ investigation, he was not free to leave, and after the deputies had viewed what they apparently believed to be cocaine in the matchbox, they had probable cause to arrest him. See State v. Whitfield, 444 So.2d 1154, 1156 n. 2 (Fla. 2d DCA 1984). Here, it is unnecessary to apply the “fairly susceptible” test to the testimony “He didn’t say nothing” because in the context in which the comment was made, it is clearly a direct comment on the appellant’s silence. See David v. State, 369 So.2d 943 (Fla.1979).[1] As such, the admission of the comment is constitutional error subject to the harmless error test. See DiGuilio.
After a close examination of the permissible evidence on which the jury could have legitimately relied as well as the impermissible evidence which might have possibly influenced the jury, even when all the evidence is viewed in the light most favorable to the state, I cannot say that the state has met its heavy burden of establishing beyond a reasonable doubt that the comment on the appellant’s silence did not affect the verdict. See DiGuilio.
The only evidence connecting the appellant with the matchbox is purely circumstantial. Although Deputy Biggs testified that there was a small crowd on the right side of the road when he arrived, he did not arrive until after the appellant had collided with the patrol car. Deputy Teed, on the *696 other hand, testified that as soon as the patrol car stopped the thirty or forty people who had been milling around “swoop[ed] down ... they converged [on] the car.” Thus, there is at least a reasonable possibility that anyone in the crowd could have dropped the matchbox or thrown it under the patrol car. Furthermore, only one witness testified that he saw the appellant throw anything, and even that witness did not see what was thrown. Additionally, the record suggests that the deputies quickly looked under the car. Once they saw and retrieved the matchbox, no further effort was made to conduct a more thorough search to see if there might be any other objects under the car. Therefore, assuming that the appellant threw something, there remains a reasonable possibility that he threw something other than the matchbox. When the circumstantial nature of the evidence is considered along with the cursory nature of the search under the patrol car, I cannot agree with the majority’s conclusion that the permissible evidence implicating the appellant is strong.
Moreover, unlike the defendant in DiGuilio, the appellant here testified on his own behalf and thereby placed his credibility in issue. This increases the likelihood that the comment on the appellant’s prior silence affected the jury’s verdict as the appellant’s only chance of being found not guilty of the charges against him was for the jury to believe his version of the facts. Since the appellant’s credibility was critical, I cannot agree with the majority’s conclusion that there is no possibility that the impermissible comment on the appellant’s silence contributed to the verdict.
In DiGuilio, the supreme court recognized that comments on silence are high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial by influencing the jury verdict. The likelihood that a comment deprived a defendant of a fair trial is increased where, as here, the only evidence of guilt is circumstantial, the comment on silence is direct, and the defendant’s credibility is at issue.
After carefully considering all the circumstances of this case, I do not believe the state has met its burden of showing the error was harmless. Therefore, I would reverse the conviction and remand for a new trial.

. In Long v. State, 494 So.2d 213 (Fla.1986), the court receded from its application of the per se reversible error rule to comments on a defendant’s silence, but not from its observation that there is no need to resort to possible interpretations when the reference to a defendant’s silence is direct.